**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

INNOVATIONS SURGERY CENTER, P.C.,　*
*et al.*,
　　　　　　　　　　　　　　　　　　*

　　　Plaintiffs,
　　　　　　　　　　　　　　　　　　*

　v.　　　　　　　　　　　　　　　　Civil Action No. 8:21-cv-2680-PX
　　　　　　　　　　　　　　　　　　*

UNITED HEALTHCARE INSURANCE CO.,
*et al.*,　　　　　　　　　　　　　　*

　　　　　　　　　　　　　　　　　　*

　　　Defendants.

　　　　　　　　　　　　　***

## MEMORANDUM OPINION

Pending before the Court in this healthcare insurance coverage dispute is Defendants UnitedHealthcare Insurance Company ("United") and Optum Health, LLC's ("Optum") motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 41. The motion has been fully briefed, and a hearing was held on March 18, 2024. *See* Loc. R. 105.6. For the following reasons, the motion to dismiss is GRANTED in part and DENIED in part.

**I.　　Background**

This case concerns Defendants' denial of healthcare benefit payments for nearly 600 gynecological and surgical procedures that Plaintiffs Innovations Surgery Center, P.C. ("Innovations") and Center for Gyn Surgery ("Gyn Surgery") performed for scores of patients. Plaintiffs are healthcare facilities that provide "state-of-the-art gynecological surgical services," primarily for women who experience complications and have "undergone unsuccessful procedures elsewhere." ECF No. 40 at 1. Defendant United is a health insurance company, and

Defendant Optum provides United with administrative support to include reimbursement claim adjudication services.[1]  *Id. ¶¶* 19–20.

From January 2018 to June 2020, Plaintiffs provided healthcare services on an out-of-network basis to 277 patients that United had insured (the "Insureds").  *Id. ¶¶* 1, 2, 4.  The Insureds' health coverage plans include some that are subject to the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. 1001 *et seq.*, and some that are not (collectively "the Plans").  *Id. ¶* 27.

In all cases, Plaintiffs required the Insureds to sign one of two assignment agreements.  *Id. ¶* 33.  These agreements state in pertinent part:

> I hereby assign and convey to the surgery center all surgical, medical insurance, or other health coverage benefits otherwise payable directly to me by my Health Plan for the cost of the services rendered by the surgery center.
>
> To the extent that any charges for services that I received from the surgery center have not been paid, I also assign and convey to the surgery center any claim, cause of action, or right of recovery that I may have against my Health Plan or any other third party, under state or federal law, to recover any benefits owed under my Health Plan. This includes, but is not limited to, any cause of action I may have under the Employee Retirement Income Security Act, also known as "ERISA."
>
> ECF No. 40-2 at 7.[2]

The assignment agreements allowed Plaintiffs to pursue payment from Defendants for the services provided in an amount determined by a formula in each Insured's Plan.  ECF No. 40 ¶¶ 32, 34, 52.  Relevant to this dispute, Plaintiffs initiated payment requests for out-of-network services by seeking pre-authorization from Defendants in advance of any services performed.  *Id. ¶* 43.  Once the services were completed, Plaintiffs submitted reimbursement claims to

---

[1]  Throughout the Complaint, Plaintiffs refer to Defendants collectively because at this early stage in the case, Plaintiffs do not know Optum's exact involvement as to the adjudication and payment of claims.  *See* ECF No. 40 at 4 n. 2.

[2]  Defendants do not dispute that the agreements are materially similar.  *See* ECF No. 41-1 at 23.

Defendants on behalf of the Insureds.  *Id.* ¶¶ 3, 44.  Each reimbursement claim typically included two or more medical procedures, delineated separately on a "claim line."  *Id.* ¶ 3.  Each claim line identified the specific medical procedure by a universally accepted Current Procedural Terminology ("CPT") Code.  *Id.*

From January 1, 2018 to June 9, 2020, Plaintiffs filed reimbursement claims that included 590 claim lines, totaling $10,725,980 in billed charges[3], for medical services performed on the Insureds.  *Id.* ¶ 4.  Innovations specifically submitted 123 reimbursement claim lines, amounting to $2,252,416 in billed charges.  *Id.* ¶ 54.  Defendants, in turn, denied payment for 79 claim lines, totaling $1,461,784 in billed charges, and Defendants paid Innovations 16% of the billed charges for the remaining 44 claim lines.  *Id.*  Plaintiff GYN Surgery submitted 467 claim lines to Defendants, totaling $8,473,564 in billed charges.  *Id.* ¶ 55.  For those, Defendants denied 277 of the claim lines in their entirety, or $4,936,053 in billed charges, and paid only 22% of the total billed charges for the remaining 190 claim lines.  *Id.*

Defendants gave Plaintiffs two reasons for denying or reducing payment for the services coded in the claim lines.  *See id.* ¶ 64.  First, Defendants explained that Plaintiffs had improperly bundled their claim lines, meaning some claim lines were "integral" to other primary procedures included in the reimbursement claims and so could not be separately billed.  *Id.* ¶ 65.  Second, Defendants informed Plaintiffs that they had used improper CPT Codes for the claim lines or had not provided sufficient documentation supporting the procedures.  *Id.* ¶ 69.

Plaintiffs, in response, pursued the appeals process provided by Defendants.  *Id.* ¶¶ 6, 57–58.  As part of that process, Plaintiffs submitted all requested information and documentation

---

[3] Billed charges are the "list price" for Plaintiffs' services.  ECF No. 40 ¶ 3.

supporting the accuracy of the requested payments. *Id.* ¶ 45. To date, Defendants have either upheld the initial determinations or simply did not respond. *Id.* ¶ 58.

In 2019, Plaintiffs requested that Defendants revisit the denial and underpayment decisions. *Id.* ¶ 11. Defendants took the better part of a year to purportedly reassess the denial of the claims. *Id.* ¶¶ 11–13. In the end, however, Defendants refused to make any further payments on the 590 claim lines. *Id.* ¶ 13.

On October 19, 2021, Plaintiffs filed suit in this Court, asserting direct claims of unjust enrichment, quantum meruit, breach of implied-in-fact contract, and a violation of Maryland's Prompt Payment Law, Md. Code, Ins. § 15-1005. ECF No. 1 ¶¶ 100–25. Also, as assignees of the Insureds' benefits claims, Plaintiffs alleged a violation of the Maryland Consumer Protection Act ("MCPA"), Md. Code, Com. Law § 13-301, and breach of implied covenant of good faith and fair dealing. *Id.* ¶¶ 126–30, 151–58. For ERISA-covered Plans, Plaintiffs alleged a breach of fiduciary duty and failure to pay benefits in violation of ERISA Sections 502 & 503, 29 U.S.C. §§ 1132 & 1133. *Id.* ¶¶ 131–44. And for non-ERISA covered Plans, Plaintiffs asserted a common law breach of contract claim. *Id.* ¶¶ 145–50.

Defendants moved to dismiss the Complaint on a variety of grounds, to include that Plaintiffs failed to make plausible that any claims implicated ERISA-covered Plans. ECF No. 17-1 at 10–13. Defendants also argued that Plaintiffs failed to plausibly allege a valid assignment of benefits. *Id.* at 13–14. Last, Defendants challenged each claim as legally deficient for many of the same reasons Defendants raise in the motion currently before the Court. *Id.* at 17–28; *see also* ECF No. 41-1.

On August 31, 2022, the Court held a virtual hearing on Defendants' original motion to dismiss, principally to discuss fundamental pleading deficiencies that rendered the Complaint

incurably vague.  *See* ECF No. 41-3.  In the end, the Court dismissed with prejudice the Maryland Prompt Payment Law claim; struck the breach of implied covenant of good faith and fair dealing claim; and dismissed all other claims without prejudice.  *Id.* at 45:19–46:19, 48:1–7.  The Court also ordered, with the parties' consent, exchange of informal discovery to ascertain which of the 590 disputed claim lines were covered by ERISA versus non-ERISA Plans, and whether the Insureds had assigned recovery rights to Plaintiffs.  *Id.* at 54:22–55:16.  Ultimately, after several months, the parties agreed that Defendants would produce to Plaintiffs 60 representative Plans which covered some, but not all, of the 590 claim lines that are the subject of this case.  *See* ECF Nos. 28 & 34.

On May 30, 2023, Plaintiffs filed an Amended Complaint, in which they replead unjust enrichment (Count I), quantum meruit (Count II), and breach of implied-in-fact contract (Count III), *id.* ¶¶ 113–34; and as assignees, violations of ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), for failure to pay the claims (Count V) and §§ 502(a)(1)(B), 502(c)(1)(B) & 503(2), 29 U.S.C. §§ 1132(a)(1)(B), 1132(c)(1)(B) & 1133(2), for civil enforcement penalties (Count VI), *id.* ¶¶ 144–71.  Alternatively, for non-ERISA Plans, Plaintiffs assert, as assignees, common law breach of contract for failure to pay the claims (Count VII).[4]  *Id.* ¶¶ 172–78.  Last, on behalf of all Insureds, Plaintiffs allege that Defendants violated the MCPA, Md. Code, Com. Law § 13-301 (Count IV).  *Id.* ¶¶ 135–43.

Defendants have renewed their motion to dismiss as to all claims.  ECF No. 41.  The Court considers the sufficiency of each claim in turn.

---

[4]  The parties agree Plaintiffs can pursue the breach of contract claim (Count VII) solely for denied benefits under non-ERISA Plans.  ECF No. 41-1 at 19; ECF No. 42 at 29–30; ECF No. 43 at 8.

## II.    Standard of Review

A motion to dismiss pursuant to Federal Rule to Civil Procedure 12(b)(6) "tests the sufficiency of the complaint." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). The Court "accept[s] the factual allegations in the complaint as true and construe[s] them in the light most favorable to the nonmoving party." *Rockville Cars, LLC v. City of Rockville*, 891 F.3d 141, 145 (4th Cir. 2018). However, the "Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context." *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009). Nor can courts "accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *see Iqbal*, 556 U.S. at 663 (". . . the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements."). To survive a motion to dismiss, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court must be able to deduce "more than the mere possibility of misconduct" and the facts of the complaint, accepted as true, must demonstrate that the plaintiff is entitled to relief. *Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 526 (D. Md. 2015) (quoting *Iqbal*, 556 U.S. at 679), *aff'd as modified*, 659 F. App'x 744 (4th Cir. 2016).

## III.    Analysis

### A.    Counts I–III

The Court first addresses the three common law claims—unjust enrichment, quantum meruit, and breach of implied-in-fact contract—that Plaintiffs pursue directly against Defendants. The crux of each claim is that Defendants owed a legal duty to pay Plaintiffs for all services provided to the Insureds. *See* ECF No. 40 ¶¶ 113–34. Defendants urge the Court to dismiss the claims as preempted under ERISA, or alternatively, for failing to state a cause of

action.  ECF No. 41-1 at 16, 24–27.  Because the claims fail as a matter of law, they will be dismissed, and the Court need not reach whether ERISA preempts the causes action.

### 1.    Unjust Enrichment (Count I)

For the unjust enrichment claim, Plaintiffs aver that Defendants' pre-authorization of the services underlying the 590 claim lines somehow triggered an obligation to pay such that subsequent denials rendered Defendants unjustly enriched.  ECF No. 40 ¶¶ 113–20.  To make plausible an unjust enrichment claim, some averred facts must show that (1) the plaintiff conferred a benefit upon the defendant, (2) the defendant appreciated or knew of the benefit, and (3) the circumstances "make it inequitable for the defendant to retain the benefit without payment of its value."  *MTBR LLC v. D.R. Horton, Inc.*, No. RDB-07-3363, 2008 WL 3906768, at *11 (D. Md. Aug. 22, 2008) (citing *County Comm'rs of Caroline County v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 95 n. 7 (2000)).

When viewing the Amended Complaint most favorably to Plaintiffs, no facts make plausible that Plaintiffs have conferred a "benefit" on Defendants.  The only conceivable "benefit" is Defendants' avoidance of payment to the *Insureds* per the Plan terms.  *See* ECF No. 40 ¶¶ 114–15.  Accordingly, the benefit of such avoidance is conferred by the Insureds, not the Plaintiffs.  *See id.*  Importantly, Plaintiffs have confirmed that they pursue this claim "directly" against Defendants, *not* as assignees.  *See id.* ¶¶ 47–48.  And yet, they offer no other facts to make plausible what benefit Plaintiffs have provided directly to Defendants.  *See* ECF No. 40. Without some alleged facts making plausible that Plaintiffs conferred a benefit on Defendants, the claim cannot proceed.  *See MTBR LLC*, 2008 WL 3906768, at *11; *see also Smallwood v. Nationstar Mortgage, LLC*, No. PX-16-4008, 2018 WL 2020422, at *2 (D. Md. May 1, 2018) (dismissing unjust enrichment claim because plaintiffs failed to plead a benefit conferred upon

defendant); *Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 249 F. Supp. 2d 703, 708–09 (D. Md. 2003) (same).

When pressed at the hearing as to how Plaintiffs directly provided Defendants with a benefit, Plaintiffs relied on *Emergency Physician Servs. of New York v. UnitedHealth Grp., Inc.* to support the viability of the claim. *See* ECF No. 49; *Emergency Physician Servs. of New York v. UnitedHealth Grp., Inc.*, No. 20-9183, 2021 WL 4437166 (S.D.N.Y. Sept. 28, 2021). But *Emergency Physician Services* does not reach the theory of relief Plaintiffs pursue here. Rather, in *Emergency Physician Services*, plaintiff medical providers sued insurers for systematically underpaying claims for emergency services that the insurers were "compelled by law" to pay directly to the providers. *See Emergency Physician Servs.*, 2021 WL 4437166, at *1–2, 12. Specifically, New York state law not only obligated medical providers to render emergency aid where necessary, it also imposed on insurance companies the statutory requirement of direct payment to the providers in return for the discharge of any payments owed to the insureds per insurance plan terms. *See id.* at *2 (citing N.Y. Fin. Serv. Law § 605(a)). Consequently, defendants unjustly received the "benefit" of such discharge while avoiding full payment to the providers. *See id.* at *12; *see also El Paso Healthcare Sys., LTD v. Molina Healthcare of New Mexico, Inc.*, 683 F. Supp. 2d 454, 457, 461–62 (W.D. Tex. 2010) (holding plaintiffs conferred a benefit upon defendants because rules governing Medicaid required insurers to pay for care provided on an emergency basis (citing N.M. Admin. Code § 8.305.7.9–11)).

Here, by contrast, no statute compelled Defendants to pay Plaintiffs directly in exchange for discharging the obligation under the Plans. Rather, Plaintiffs squarely contend the opposite—that under the contractual obligations set forth in the Plans, Defendants were obligated to pay the *Insureds* for the provision of covered health services and in turn, the Insureds assigned

to Plaintiffs the right to pursue the payments as assignees. ECF No. 40 ¶¶ 33–36, 114–18. But Defendants had no direct obligation to pay Plaintiffs such that avoidance of the payment is a benefit that Plaintiffs conferred on Defendants. *Cf. Emergency Physician Servs.*, 2021 WL 4437166, *2. And because Plaintiffs have offered no facts to make plausible any other benefits they provided to Defendants, the unjust enrichment claim fails. Thus, the motion as to Count I is granted.

### 2.        Quantum Meruit (Count II)

The "quantum meruit" count rests on the theory that Defendants must pay Plaintiffs their full billed charges because Defendants, through the Insureds, had "requested" that Plaintiffs provide surgical services. ECF No. 40 ¶¶ 121–25. Defendants rightly point out that many courts do not consider quantum meruit a standalone cause of action. *See* ECF No. 41-1 at 25; *see also Klicos Painting Co. v. Saffo Contractors, Inc.*, No. JFM-15-02505, 2017 WL 3976625, at *5 (D. Md. Sept. 6, 2017) (quoting *Dolan v. McQuaide*, 215 Md. App. 24, 37–38 (2013)), *amended*, No. CV RDB-15-2505, 2018 WL 1786968 (D. Md. Apr. 13, 2018). And even if it could be construed as a separate claim, the elements are identical to those of an unjust enrichment claim. *See J.E. Dunn Constr. Co. v. S.R.P. Dev. Ltd. P'ship*, 115 F. Supp. 3d 593, 604–05 (D. Md. 2015). But, because Plaintiffs have failed to plead any plausible unjust enrichment theory, a companion quantum meruit claim too must fail. Thus, Count II is dismissed.

### 3.        Implied-in-Fact Contract (Count III)

For this claim, Plaintiffs essentially aver that because Defendants had granted pre-authorization for the services and had historically paid other claims, Defendants created some kind of implied contractual obligation to pay on the currently disputed claims. ECF No. 40 ¶¶ 126–28. Plaintiffs point to a separate agreement between Defendants and the *in-network*

providers who performed the services, where Defendants agreed to pay a higher fixed rate for services with the same CPT Codes. *Id.* ¶ 129. This prior course of conduct, allege Plaintiffs, makes plausible a binding implied-in-fact contract applicable to the 590 out-of-network claim lines. *Id.* ¶ 130.

An implied-in-fact contract often is "evidenced by the parties' 'conduct, rather than an explicit set of words.'" *State Constr. Corp. v. Slone Assocs., Inc.*, 385 F. Supp. 3d 449, 463 (D. Md. 2019) (quoting *Mogavero v. Silverstein*, 142 Md. App. 259, 275 (2002) (citations omitted)). A breach of an implied-in-fact contract claim must plausibly aver the existence of an agreement, that is, "mutual assent (offer and acceptance)," to an agreement "definite in its terms," in exchange for "sufficient consideration." *Id.* at 464–65 (quoting *CTI/DC, Inc. v. Selective Ins. Co. of Am.*, 392 F.3d 114, 123 (4th Cir. 2004) (citation omitted)).

An implied-in-fact agreement is sufficiently "definite," when the meaning of such terms can be "ascertained to a reasonable degree of certainty." *Mogavero*, 142 Md. App. at 271–72 (quoting *Robinson v. Gardiner*, 196 Md. 213, 217 (1950)). But where asserted terms are too vague or nonspecific such that the parties cannot know what they are "called upon by its terms to do," then a contract has not been formed. *Id.* at 272 (emphasis omitted); *see Dolan*, 215 Md. App. at 29–30, 37 (finding plaintiff's agreement to do "planning" for the business could not bind defendant to implied-in-fact contract that they would be equal partners in the venture and share new profits equally). Notably, in the medical insurance context, mere "pre-authorization" for medical services at a certain percentage of the billed charges does not amount to sufficiently definite terms to support an implied-in-fact contract. *See Aton Center, Inc. v. Carefirst of Md., Inc.*, No. DKC 20-3170, 2021 WL 1856622, at *6 (D. Md. May 10, 2021).

When viewing the Amended Complaint facts most favorably to Plaintiffs, the claim suffers from two primary defects. First, any alleged course of conduct regarding *in-network* payments cannot, without more, extend to out-of-network payments. *See* ECF No. 40 ¶¶ 128–29. Put differently, no facts in the Amended Complaint allow the Court to infer that Defendants' in-network course of conduct can be engrafted on the out-of-network claims. *See id.*

Second, the out-of-network allegations are insufficient. The Amended Complaint makes clear that no one Plan governs all out-of-network claims. *See, e.g.*, *id.* ¶¶ 49, 128, 131. Rather, many different Plans, each with different methods of calculating payments, cover the 590 disputed claim lines. *See id.* ¶¶ 49–53. Indeed, the Amended Complaint sets out at least four different reimbursement methodologies, described as "exemplars," for the various ways Defendants calculate reimbursement. *See id.* ¶ 51. Accordingly, the Court cannot plausibly infer that historic percentages of 62% and 70% reimbursement rates on similar out-of-network claims establishes a meeting of the minds on the proper terms of payment here. *See id.* ¶¶ 54–55*; see also Aton Center, Inc.*, 2021 WL 1856622, at *6 (claim fails in part because historic 44.38% payment rate alone cannot make plausible same rate applicable for "133 different claims, no matter the patient, no matter the service, no matter the date."). Because the Amended Complaint fails to aver an implied-in-fact contract with sufficiently definite terms, the claim must fail. *See Mogavero*, 142 Md. App. Ct. at 271–72. Thus, the motion as to Count III is granted.

### B. Assigned Claims (Counts IV–VII)

Plaintiffs next pursue a series of claims as assignees. Where an insured has assigned rights to payment under a plan to a medical provider, the provider may pursue such reimbursement pursuant to a valid assignment agreement. *See Bobby P. Kearney, MD, PLLC v.*

*Blue Cross & Blue Shield of N. Carolina*, 376 F. Supp. 3d 618, 625–26 (M.D.N.C. 2019) (citing *Brown v. Sikora & Assocs., Inc.*, 311 F. App'x 568, 570 (4th Cir. 2008)); *Dwayne Clay, M.D., P.C. v. Gov't Emps. Ins. Co.*, 356 Md. 257, 269 (1999). The parties do not dispute that the 590 claim lines apply to Insureds who executed valid assignment clauses. *See* ECF No. 41-1 at 23–24; ECF No. 40 ¶ 33. Thus, at the motion to dismiss stage, and pursuant to such assignments, Plaintiffs can pursue claims against Defendants originally available to the Insureds concerning payment for the 590 disputed procedures. *See Bobby P. Kearney*, 376 F. Supp. 3d at 625–26; *Dwayne Clay*, 356 Md. at 269.

Defendants instead argue that many of the Plans prohibit Insureds from assigning the claims to a third party. ECF No. 41-1 at 28–30. As to the claims related to those Insureds who have anti-assignment clauses as part of their Plans, say Defendants, the claims cannot be assigned to Plaintiffs, and so must be dismissed on this basis alone. *See id.* Plaintiffs respond that the scope and applicability of such anti-assignment provisions require a fact intensive-inquiry not suitable for review at the dismissal stage.[5] ECF No. 42 at 30–35. Plaintiffs have the better argument.

Plan provisions are interpreted according to basic "principles of contract law, enforcing the plan's plain language in an ordinary sense." *Wheeler v. Dynamic Engineering, Inc.*, 62 F.3d 634, 638 (4th Cir. 1995); *see Della Ratta v. Larkin*, 382 Md. 553, 569 (2004) ("In determining the meaning of contractual language, we objectively interpret the language, and where the

---

[5] Plaintiffs also contend that the Court may not consider the Plan excerpts because Plaintiffs did not attach them to the Amended Complaint. ECF No. 42 at 30–31. The Court disagrees. The Court may consider documents attached to the motion when the documents are integral to the complaint and the plaintiffs do not challenge their authenticity. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016); *see also Pulte Home Corp. v. Montgomery Cnty.*, 271 F. Supp. 3d 762, 769–70 (D. Md. 2017) (quoting *Phillips v. LCI Intern., Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)), *aff'd*, 909 F.3d 685 (4th Cir. 2018). The Amended Complaint refers and relies heavily on the Plan documents and authenticity is undisputed. *See* ECF No. 40. Thus, the Court considers the excerpted Plans when deciding the motion.

language is unambiguous, give effect to its plain meaning." (citing *Wells v. Chevy Chase Bank*, 363 Md. 232, 250–51 (2001)).  Where the clear and unambiguous plan terms prevent an insured from assigning claims to a third party, the provision may be enforced.  *Cf. Med. Univ. Hosp. Auth./Med. Ctr. of the Med. Univ. of S.C. v. Oceana Resorts, LLC*, No. 2:11-CV-1522, 2012 WL 683938, at *6 (D.S.C. Mar. 2, 2012); *Bobby P. Kearney*, 376 F. Supp. at 626–27 (collecting cases); *Della Ratta*, 382 Md. at 570 ("we have adopted the rule that an assignment in violation of an anti-assignment clause is invalid and unenforceable") (citing *Pub. Serv. Comm'n of Maryland v. Panda-Brandywine, L.P.*, 375 Md. 185, 203 (2003)).

But to determine the scope and validity of any given anti-assignment provision, the Court must construe the plan language as a whole.  *Johnson v. Am. United Life Ins. Co.*, 716 F.3d 813, 820 (4th Cir. 2013) ("Courts must look at the ERISA plan as a whole and determine the provision's meaning in the context of the entire agreement."); *Owens-Illinois, Inc. v. Cook*, 386 Md. 468, 497 (2005) ("In seeking to discern the parties' intention, we construe the contract as a whole . . . so as not to omit an important part of the agreement." (citations omitted)).  On this score, the unfortunate reality of this case is that the 590 claim lines are governed by over two-hundred Plans.  *See, e.g.*, ECF No. 40 ¶¶ 54–55.  Despite the Court having urged the parties to clarify which Plans govern which claim lines, the Defendants provided only a "representative sample" of the Plans applicable to about 60 Insureds, and the Court cannot even figure out which of those Plans go with which claim lines.  *See* ECF No. 41-3 at 22:8–23:3; ECF Nos. 28 & 34. That some Plans may include anti-assignment clauses does this Court little good in determining whether Plaintiffs can proceed on some, or all, of the assigned claims.

And even as to the "representative sample" Plans, some anti-assignment clauses do not unambiguously preclude assignment of the claims.  *See, e.g.*, ECF Nos. 41-7, 41-8, 41-9, 41-10,

41-17, 41-34, 41-40.  The clauses are varied in scope and applicability.  *See id.*  Some provisions

seem to permit assignment with United's consent.  *See* ECF Nos. 41-8, 41-9, 41-10, 41-17.

While others permit assignment pursuant to specific preconditions.  *See* ECF Nos. 41-7, 41-34,

41-40.  Without more, therefore, the Court cannot conclude as a matter of law that any given

Insured would be prohibited from assigning her claims to Plaintiffs.  *Cf. Exact Scis. Corp. v.*

*Blue Cross & Blue Shield of N. Carolina*, No. 1:16125, 2017 WL 1155807, at *4 (M.D.N.C.

Mar. 27, 2017) (refusing to reach scope of anti-assignment clause on motion to dismiss); *Bobby*

*P. Kearney*, 376 F. Supp. at 627 (holding plaintiff lacked derivative standing because of "clear,

unambiguous" anti-assignment language in the healthcare plan); *Oceana Resorts, LLC*, 2012 WL

683938, at *7 (granting summary judgment in favor of defendant because the plan "clearly

prohibited" patient from assigning plan benefits).

The Court next turns to the sufficiency of each assigned claim.

### 1.      Maryland Consumer Protection Act (Count IV)

The Amended Complaint alleges that Defendants violated the Maryland Consumer

Protection Act ("MCPA"), Md. Code, Com. Law § 13-301, by representing to the Insureds that it

provided out-of-network coverage and then not providing said coverage.  ECF No. 40 ¶¶ 135–43.

The MCPA prohibits any entity doing business in Maryland from engaging in "[u]nfair, abusive,

or deceptive trade practices," including, "deception, fraud . . . misrepresentation, or knowing

concealment . . . of any material fact with the intent that a consumer rely on the same in

connection with [] [t]he promotion or sale of any consumer goods . . . ."  Md. Code, Com. Law §

13-301(9).  To state a claim under the MCPA, a plaintiff must plausibly aver that the defendant

engaged in an unfair or deceptive practice or misrepresentation on which the plaintiff relied, and

which caused actual injury.  *Ayres v. Ocwen Loan Servicing, LLC*, 129 F. Supp. 3d 249, 270 (D. Md. 2015) (citing *Stewart v. Bierman*, 859 F. Supp. 2d 754, 768–69 (D. Md. 2012)).

Further, because an MCPA claim sounds in fraud, it must meet the heightened pleading standard articulated in Rule 9(b) of the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 9(b).  That is, a plaintiff must plead "with particularity the circumstances constituting fraud," including, "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."  *Spaulding v. Wells Fargo Bank, NA.*, 714 F.3d 769, 781 (4th Cir. 2013) (quoting Fed. R. Civ. P. 9(b) & *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (citation omitted)).

Viewing the Amended Complaint facts most favorably to Plaintiffs, the claim amounts to this:  Defendants, through the Plans and "various media and formats," promised to provide out-of-network coverage but failed to do so.  ECF No. 40 ¶¶ 137–39.  Nowhere does the Amended Complaint set out any specific representations, inducements, or statements on which the Insureds relied.  *See* ECF No. 40; *see Spaulding*, 714 F.3d at 781.  The MCPA claim, in short, reads as little more than a repackaged breach of contract claim.  *See* ECF No. 40 ¶¶ 135–43.  Bare as to any other facts that would "nudge" the claim "across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570, the MCPA count must be dismissed.  Thus, Defendants' motion as to Count IV is granted.

## 2.    ERISA Section 502(a)(1)(B) (Count V)

Next, Plaintiffs allege a violation of ERISA Section 502(a)(1)(B) stemming from Defendants' alleged improper underpayments or denial of benefit payments pursuant to the ERISA-covered Plans.  ECF No. 40 ¶¶ 144–56.  Defendants do not argue that the claim is

insufficiently pleaded.  Rather, they contend the claim fails because Plaintiffs have not plead they exhausted administrative remedies.  ECF No. 41-1 at 30–32.

Section 502(a)(1)(B) provides that "[a] civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).  As a precondition to federal suit, plan participants must "pursue and exhaust plan remedies."  *Gayle v. UPS*, 401 F.3d 222, 226 (4th Cir. 2005) (citation omitted).  The exhaustion requirement aims to "minimize the number of frivolous ERISA lawsuits; promote consistent treatment of benefit claims; provide a non[-]adversarial dispute resolution process; and decrease cost and time of claims settlement."  *McCarty v. Exelon Corp.*, No. TDC-18-1944, 2019 WL 1980669, at *3 (D. Md. May 3, 2019) (citation omitted).

Importantly, however, in the context of ERISA, alleged lack of exhaustion does not extinguish the claim as a matter of law.  Failure to exhaust is instead an affirmative defense that the defendant must plead and prove with competent evidence.  *See McCarty*, 2019 WL 1980669, at *3.  Only "in the relatively rare circumstances where [all] facts sufficient to rule on an affirmative defense . . . 'clearly appear[] *on the face of the complaint*'" can an affirmative defense be resolved at the dismissal stage.  *Goodman*, 494 F.3d at 464 (quoting *Richmond, Fredericksburg & Potomac R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993) (emphasis added)).

Defendants look principally to the Amended Complaint, arguing that it fails to specify the specific Plan exhaustion requirements and whether Plaintiffs pursued them.  ECF No. 41-1 at 31.  The Amended Complaint, however, details the efforts Plaintiffs took to resolve the claims as assignees, which included pursuing Defendants' "internal appeals mechanism" and informal channels such as letters, emails, phone calls, and proposed meetings.  *See* ECF No. 40 ¶ 6.

Moreover, without all the Plan documents—which Plaintiffs do not have—they cannot adequately respond to Defendants' exhaustion argument. *See* ECF Nos. 28 & 34. Last, because exhaustion is an affirmative defense, it would be particularly ill-suited for resolution at the dismissal stage. *See Goodman*, 494 F.3d at 464. Thus, Defendants' motion as to Count V is denied.

### 3. ERISA Sections 502(a)(1)(B), 502(c)(1)(B), and 503(2) (Count VI)

Next, Plaintiffs allege that Defendants violated ERISA sections 502(a)(1)(B), 502(c)(1)(B), and 503(2). ECF No. 40 ¶¶ 157–71. Construing the claim in the light most favorable to Plaintiffs, they seek civil enforcement penalties under Section 502(c)(1)(B), 29 U.S.C. § 1332(c)(1)(B), for Defendants' alleged failure to provide "a full and fair review" of denied or underpaid claim lines as required under Section 503(2), 29 U.S.C. § 1133(2). *See id.* Plaintiffs' claim fails, however, because statutory penalties under Section 502(c)(1)(B) apply only to such violations of the plan administrator, whereas the requirements set forth in Section 503(2) apply specifically to the plan itself. *See* 29 U.S.C. §§ 1132(c)(1)(B) & 1133(2).

Section 503 requires that every "plan" afford its insured certain protections surrounding the denial of benefits. 29 U.S.C. § 1133. This section reads,

> In accordance with regulations of the Secretary, ***every employee benefit plan*** shall—
> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133 (emphasis added).

However, the sought-after statutory penalties, as articulated in Section 502(c)(1)(B), apply against any "[plan] administrator" who "fails or refuses to comply with a request for any

information which such administrator is required by this subchapter to furnish to a participant . . . ." 29 U.S.C. § 1132(c)(1)(B). These terms—"plan" and "plan administrator"—are not interchangeable under ERISA. Indeed, ERISA specifically defines a "plan" as "an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension plan," 28 U.S.C. § 1002(3); and defines "[plan] administrator" as "the person specifically so designated by the terms of the instrument under which the plan is operated . . . ," *id.* at 16(A)(i). Thus, statutory penalties for violations of the plan administrator cannot reach those obligations ascribed solely to the plan. *See id.* On this point, the Court follows eight circuit courts of appeal who have similarly concluded. *See Lee v. ING Groep, N.V.*, 829 F.3d 1158, 1161–62 (9th Cir. 2016) (collecting cases) (stating that "plans" and "plan administrators" have different definitions under ERISA (citing 28 U.S.C. § 1002(1), (2)(A), (3), (16)(A)); *see also Halo v. Yale Health Plan*, 819 F.3d 42, 58–60 (2d Cir. 2016); *Medina v. Metropolitan Life Ins.*, 588 F.3d 41, 48 (1st Cir. 2009) ("It is well established that a violation of § 1133 and its implementing regulations does not trigger monetary sanctions under § 1132(c)" (citing *Wilczynski v. Lumbermens Mut. Cas. Co.*, 93 F.3d 397, 406 (7th Cir. 1996); *Struhlreyer v. Armco, Inc.*, 12 F.3d 75, 79 (6th Cir. 1993); *Groves v. Modified Ret. Plan*, 803 F.2d 109, 111–12, 117–18 (3d Cir. 1986)); *Brown v. J.B. Hunt Transport Servs., Inc.*, 586 F.3d 1079, 1089 (8th Cir. 2009); *Walter v. Int'l Ass'n of Machinists Pension Fund*, 949 F.2d 310, 315–16 (10th Cir. 1991). Because the statutory remedy sought is not available for the alleged violation, the claim is dismissed on this ground alone.

Although not altogether clear, the Amended Complaint also seems to suggest an alternative road to statutory penalties under Section 502(c)(1)(B): that Defendants failed to provide to Plaintiffs the Plan documents upon request. *See* ECF No. 40 ¶ 165. To the extent

Plaintiffs intend to pursue such a claim, it too fails because the claim falls outside the scope of the assignment agreements.[6]  Obviously, Plaintiffs are accorded rights to pursue only those claims which the Insureds assigned to them.  Restatement (Second) of Contracts § 324 (1981); *see, e.g.*, *Spinedex Physical Therapy USA Inc. v. United Healthcare of Arizona, Inc.*, 770 F.3d 1282, 1292 (9th Cir. 2014).  To ascertain the scope of any assignment clause, the Court accords the "ordinary and accepted meaning" of its terms.  *Ocean Petroleum, Co. v. Yanek*, 416 Md. 74, 88 (2010); *see also Della Ratta*, 382 Md. at 569.  As the assignment agreement clearly reflects, the Insureds assigned "all surgical, medical insurance, or other health coverage *benefits otherwise payable directly to me by my Health Plan for the cost of the services rendered by the surgery center*," as well as "any claim, cause of action, or right of recovery . . . to recover any *benefits owed* under my Health Plan."  ECF No. 40-2 at 7 (emphasis added).  The assignment agreement, therefore, confers on Plaintiffs claims concerning the payment of "benefits" for "services."  *See id.*  By contrast, no reasonable reading of the provision would extend to suits seeking statutory penalties for ERISA violations not tied to the payment of benefits.  *See id.*; *Spinedex Physical Therapy*, 770 F.3d at 1292 (holding assignment language did not extend to pursuit of statutory damages for breach of fiduciary duty); *see also DaVita, Inc. v. Amy's Kitchen, Inc.*, 379 F. Supp. 3d 960, 970 (N.D. Cal. 2019); *Care First Surgical Ctr. v. ILWU-PMA Welfare Plan*, No. 14-01480, 2014 WL 12573014, at *7–10 (N.D. Cal. Apr. 5, 2019).

---

[6] Arguably, ERISA does not permit assignment of protections "conferred by statute," as opposed to ERISA protections arising from "a contractual right under a benefit plan."  *See Elite Ctr. For Minimally Invasive Surgery LLC v. Health Care Serv. Co.,* 221 F. Supp. 3d 853, 860 (S.D. Tex. 2016) (stating that "nothing in ERISA § 502 authorizes participants or beneficiaries to assign away their rights to pursue statutory penalties"); *cf. DaVita, Inc. v. Amy's Kitchen, Inc.*, 379 F. Supp. 3d 960, 966 (N.D. Cal. 2019), *aff'd*, 981 F.3d 664 (9th Cir. 2020) ("[u]nder the civil enforcement provisions of ERISA, a valid assignment confers standing on the assignee to sue in the place of the assignor.").  Because the Court finds the assignment clause does not reach the claim in any event, it need not decide whether ERISA would permit Plaintiffs to pursue the claim as assignees.

Plaintiffs, however, maintain that because the assignment agreement confers on them "any cause of action [the Insured] may have under the Employee Retirement Income Security Act, also known as 'ERISA,'" *see* ECF No. 40-2 at 7, Plaintiffs can pursue civil penalties claims as assignees.  ECF No. 42 at 39–41.  The assignment, when read as a whole, does not support Plaintiffs' interpretation.  The agreement plainly states that the Insureds have assigned any "cause of action, or right of recovery that [the Insured] may have against [her] Health Plan . . . to *recover any benefits* owed under [her] Health Plan."  ECF No. 40-2 at 7 (emphasis added).  The assignment also clarifies that the right to pursue such benefits "*includes*, but is not limited to, any cause of action I may have under the Employee Retirement Income Security Act, also known as 'ERISA.'"  *Id.* (emphasis added).  A plain reading of the agreement confines assignment to causes of action arising from the payment or denial of benefits, whether such suits are brought under ERISA or some other legal theory.  *See id.*  But mere mention of ERISA in the assignment agreement does not confer on Plaintiffs the right to pursue claims beyond those for benefits.  *See Spinedex Physical Therapy*, 770 F.3d at 1292.  Thus, the motion as to Count VI must be granted.

## IV.  Dismissal With or Without Prejudice

The Court lastly addresses whether the claims will be dismissed with or without prejudice.  The Court had granted the parties many months, and many continuances, to permit informal exchange of discovery so that Plaintiffs could cure the pleading deficiencies in the original Complaint.  *See, e.g.*, ECF No. 41-3 at 54:22–55:16; ECF Nos. 28 & 34.  Plaintiffs never complained to the Court about that which they received during this discovery process.  They thereafter filed the Amended Complaint, which the Court considers Plaintiffs' best effort to allege legally sufficient causes of action.

The Court is not altogether surprised that the straightforward breach of contract claim based on non-ERISA plans (Count VII) and the denial of benefits claims under ERISA section 502(a)(1)(B) (Count V), survive on an assignment theory. Equally so, the claims which suffered from legal defects or incurable factual shortcomings remain insufficient. At this juncture, and given the unique opportunity the parties had to exchange Plan documents in advance of Plaintiffs' amending the Complaint, the Court cannot see how Plaintiffs could cure pleading deficiencies going forward as to the dismissed claims. *See Cozzarelli v. Inspire Pharms. Inc.*, 549 F.3d 618, 630 (4th Cir. 2008). Particularly, as to the unjust enrichment, quantum meruit, and implied-in-fact contract claims, while each fail under Plaintiffs' current legal theories and will be dismissed with prejudice, the Court recognizes it is conceivable (although unlikely) that discovery may reveal some of the 590 claim lines are *not* governed by validly formed contracts. In that case, some alternative equitable theory of relief such as claims of unjust enrichment, quantum meruit, or implied-in-fact contract could possibly proceed for those claims but brought by Plaintiffs as assignees. Should such circumstances arise, Plaintiffs may seek leave to amend their claims to pursue such theories of relief.

## V.    Conclusion

Based on the foregoing, Defendants' motion to dismiss is granted in part and denied in part. A separate Order follows.


 March 21, 2024                                          /s/
Date                                                Paula Xinis
                                                    United States District Judge